IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BIGPAYOUT, LLC; FINISH POINT MARKETING, LLC<br><br>      Plaintiffs,<br><br>  v.<br><br>MANTEX ENTERPRISES, LTD; AMBER BUSINESS SERVICES; and LUIS HENRQIEU SANTOS REIS VALENTE SOARES,<br><br>      Defendant. | **MEMORANDUM DECISION & ORDER**<br><br><br>Case No. 2:12-CV-01183-RJS<br><br>Judge Robert J. Shelby |

Defendant Luis Henrqieu Santos Reis Valente Soares moves to dismiss Plaintiffs' claims for fraudulent inducement, misrepresentation, alter ego, and conversion.[1] After careful consideration of the arguments and relevant legal authorities, the court concludes that Plaintiff Finish Point Marketing, LLC failed to adequately plead its fraudulent inducement claim, and that the Second Amended Complaint[2] fails to state actionable claims for misrepresentation and conversion. At the same time, however, the court concludes that Plaintiff Bigpayout, LLC may proceed in part on its fraudulent inducement claim. Accordingly, Mr. Soares's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Dkt. No. 31.

[2] Dkt. No. 19. The court will refer to the Second Amended Complaint as the "Complaint."

## BACKGROUND

This case arises out of a dispute over an advertising agreement. According to Plaintiffs, Advantage Multi Marketing, LLC provided Internet lead-generation services to third-parties.[3] In early 2009, Advantage entered into negotiations with Mr. Soares to provide pay-per-lead services to Mantex Enterprises, LTD.[4] Mr. Soares purportedly acted as owner and manager of Mantex.[5] Plaintiffs allege that during the course of the negotiations Mr. Soares made specific representations about Mantex's ability to pay for these services, in part because Advantage expressed concerns about the high cost of directing Internet traffic.[6] The parties eventually entered into a written agreement (Agreement) for lead-generation services.

Advantage and Mantex began performing under the Agreement in February 2009.[7] On several occasions, it is alleged that Mantex failed to pay the entire amount invoiced for services. Mr. Soares met with representatives of Advantage throughout 2009 to discuss outstanding balances, which at one point exceeded $2,451,901.[8] In December 2009, Advantage stopped providing lead-generation services to Mantex.[9] In the months that followed, Mr. Soares allegedly met with Advantage to discuss payment of the debt that arose under the Agreement.[10]

---

[3] Dkt. No. 19, ¶ 9.
[4] *Id.* ¶¶ 12-20.
[5] *Id.* ¶¶ 10, 18, 21, 57.
[6] *Id.* ¶¶ 12-20.
[7] *Id.* ¶¶ 23-32.
[8] *Id.* ¶¶ 33-48.
[9] *Id.* ¶ 49.
[10] *Id.* ¶¶ 50-54.

During the summer of 2009, Plaintiff Finish Point Marketing, LLC agreed to assist Mantex by providing English-speaking agents to help with escalated sales call volume.[11] Finish Point met with Mr. Soares and entered into an agreement (Customer Service Agreement), the terms of which required Mantex to pay an hourly rate and customer service commissions.[12] Over a three-month period, Mantex accrued an outstanding obligation of $165,423.[13] The Complaint contains cursory allegations that Mr. Soares made representations about Mantex's intention to pay outstanding invoices in order to ensure that Finish Point continued to provide its services.[14]

Jeff Gardner and Ryan Gardner own Advantage, Finish Point, and Bigpayout, LLC.[15] Both individuals participated in several negotiations with Mr. Soares and Mantex.[16] At some point, Advantage assigned its interest and rights under the Agreement to Bigpayout.[17] Bigpayout and Finish Point bring this action, asserting claims for breach of contract, fraudulent inducement, negligent misrepresentation, unjust enrichment, promissory estoppel, alter ego/subsidiary liability, and conversion.[18]

---

[11] *Id.* ¶¶ 67-69.

[12] *Id.* ¶¶ 68-69.

[13] *Id.* ¶¶ 72-77.

[14] *Id.* ¶¶ 104-05.

[15] *Id.* ¶¶ 67-68; Dkt. No. 32, ¶¶ 14-15.

[16] *Id.* ¶¶ 39, 41-45, 47-48.

[17] Dkt. No. 19, ¶¶ 22, 81.

[18] Originally, Advantage and Bigpayout sued Mantex and Mr. Soares in the Fourth Judicial District, State of Utah. (Dkt. No. 31, at iv.) Shortly thereafter, their counsel filed a First Amended Complaint, which named Bigpayout, Jeff Gardner, and Ryan Gardner as plaintiffs. (Dkt. No. 2-1.) After removal to this court and consideration of a motion to dismiss, the Second Amended Complaint was filed, which named Bigpayout and Finish Point as plaintiffs.

Mr. Soares moves to dismiss claims under three separate theories.[19] First, Mr. Soares argues that Bigpayout lacks standing to assert Advantage's claims as an assignee. Second, Mr. Soares argues Plaintiffs failed to plead fraud or misrepresentation with the requisite particularity. Third, Mr. Soares maintains that Plaintiffs fail to state a plausible basis for three of the tort claims, and that in any event, several of the claims should be barred by the economic loss rule.

## ANALYSIS

**I.   LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[20] When evaluating the adequacy of a complaint, courts "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief."[21] Although courts refrain from weighing evidence at this stage, legal conclusions or "[t]hreadbare recitals of the elements of a cause of action" are insufficient to survive a motion to dismiss.[22] While "[t]echnical fact pleading is not required, [a] complaint must still provide enough factual allegations for a court to infer potential victory."[23]

The Federal Rules of Civil Procedure impose an additional pleading requirement on fraud claims.[24] Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances

---

[19] *See* Dkt. No. 31.

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009)).

[22] *Id.* (quoting *Iqbal*, 556 U.S. at 678); *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

[23] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

[24] 5A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1298 (3d ed. 1998) (observing that plausibility standard applies to fraud or mistake claims).

constituting fraud or mistake."[25] In the Tenth Circuit, a plaintiff asserting a fraud claim must, at a minimum, "set forth the who, what, when, where and how of the alleged fraud" and describe "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[26] At the same time, "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."[27]

Finally, federal courts apply a modified legal standard to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[28] If a defendant presents a facial challenge to subject matter jurisdiction, the court "must accept the allegations in the complaint as true."[29] But if a defendant challenges the facts on which subject matter jurisdiction rests, the court "may not presume the truthfulness of the complaint's factual allegations [but] has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing[.]"[30] Mere reference to these materials does not convert the question of jurisdiction into a summary judgment motion.[31]

## II. STANDING

Mr. Soares argues that Bigpayout lacks standing to assert any claims.[32] Mr. Soares alleges that a valid assignment is an indispensable prerequisite to standing, and that Bigpayout failed to plead, much less prove, the existence of a proper assignment. Mr. Soares also contends

---

[25] Fed. R. Civ. P. 9(b).

[26] *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (internal quotation marks and citations omitted).

[27] Fed. R. Civ. P. 9(b).

[28] *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

[29] *Id.* at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

[30] *Id.* at 1003.

[31] *Id.*

[32] Dkt. No. 31, at 1 (citing Fed. R. Civ. P. 12(b)(1)).

that Advantage could not assign its fraud claims to Bigpayout as a matter of Utah law.[33] Neither theory, however, provides a basis for dismissal at this stage.

Mr. Soares first argues that Bigpayout failed to provide fair notice or a factual basis for asserting Advantage's claims. The court disagrees. Facially, the Complaint provides notice of the basis of standing by alleging, in two separate paragraphs, that Advantage assigned its claims to Bigpayout.[34] Although Mr. Soares appears to challenge the factual basis of the assignment, Plaintiffs submitted an affidavit describing the means by which Bigpayout acquired Advantage's assets and liabilities,[35] as well as a copy of the "Assignment of Rights," through which Advantage transferred to Bigpayout "any and all assets," included the right to enforce contractual obligations on Advantage's behalf.[36] Based on the allegations contained in the Complaint and the exhibits proffered by Bigpayout, the court concludes that Bigpayout adequately alleged a basis for standing and presented sufficient evidence to survive a motion to dismiss under Rule 12(b)(1).

Mr. Soares next argues that Utah law bars the assignment of fraud claims.[37] While Utah courts recognize that "a mere naked right to recover for fraud is not assignable" as a matter of law,[38] the court concludes that this case presents an exception to the general rule.

The Utah Supreme Court recently discussed limitations on the assignment of fraud claims in *Westgate Resorts, Ltd. v. Consumer Prot. Grp. LLC.*[39] In *Westgate*, customers who claimed to

---

[33] *See Holt*, 46 F.3d at 1003 (permitting facial and factual challenges to subject matter jurisdiction).

[34] Dkt. No. 19, ¶¶ 22, 81.

[35] Dkt. No. 32-1, at 1.

[36] Dkt. No. 32-2.

[37] *See* Dkt. 31, at 5-8.

[38] *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 2012 UT 55, ¶ 33, 285 P.3d 1219.

[39] *Id.*

have been defrauded by a large real estate timeshare company assigned their claims against the company to a consumer protection group, which subsequently brought suit.[40] The trial court dismissed a Utah Consumer Sales Practices Act claim, concluding that the consumer group lacked standing to assert a claim that sounded in fraud.[41] The Utah Supreme Court reversed, favorably citing other cases in which Utah courts had permitted the assignment of an action for fraud where the party asserting the claim seeks to recover property.[42] The Court reiterated that the "rule of non-assignability no longer extends to all actions arising [in tort]" and "an assignment is upheld when it carries with it a subsisting substantial right to property independent of the right to sue for fraud."[43] Because the consumer group sought the return of money spent by individual customers, the Court held that the claims were assignable as a matter of law.[44]

In this case, Bigpayout's claims are a far cry from "a mere naked right to recover for fraud."[45] Rather, Bigpayout seeks to recover property in the form of payments to third-party affiliates who were paid to direct Internet traffic and profit to Defendants.[46] Similar to *Westgate*, Bigpayout seeks to recover property expended as a direct result of Mr. Soares's representations. As in *Westgate*, the recovery itself sounds in contract and fraud.[47] Recognizing that the "trend of judicial opinion has been to enlarge rather than restrict the causes that may be assigned," the

---

[40] *Id.* ¶¶ 2-7.

[41] *Id.* ¶¶ 29-32

[42] *Id.* ¶¶ 33-36 ("[S]ound legal principles [persuade us] an assignment is upheld when it carries with it a subsisting substantial right to property independent of the right to sue for fraud.").

[43] *Id.* ¶ 33 (internal quotation marks and citations omitted) (alteration in original).

[44] *Id.* ¶¶ 35; *but see Gilbert v. DHC Dev., LLC*, No. 2:08-CV-258, 2013 WL 4881492, at *9-11 (D. Utah Sept. 12, 2013) (dismissing three economic tort claims, because the assigned claims did "not expressly seek the return or recovery of any property (e.g., purchase money paid)").

[45] *Id.* at *10.

[46] Dkt. No. 32, at 9-10.

[47] Dkt. No. 19, ¶¶ 80-123.

court concludes that Bigpayout adequately alleges "a subsisting substantial right to property independent of the right to sue for fraud."[48] Because Utah law does not prohibit the assignment of a claim in this context, the court concludes that Bigpayout has standing to assert Advantage's claims and denies Mr. Soares's Rule 12(b)(1) motion.

### III. FRAUDULENT INDUCEMENT

Mr. Soares moves for dismissal of Plaintiffs' fraudulent inducement claims, arguing that: (a) the economic loss doctrine acts as a bar to recovery for fraudulent inducement; (b) Plaintiffs fail to plead fraudulent inducement with particularity; and (c) the Complaint does not articulate a plausible fraudulent inducement claim.[49] The court considers each argument in turn.

#### A. The Economic Loss Doctrine

Mr. Soares argues that the economic loss rule bars Plaintiffs' fraudulent inducement claims as a matter of law, because both Bigpayout and Finish Point purportedly seek recovery of economic damages arising out of contractual obligations.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between parties, and tort law, which protects individuals . . . from physical harm by imposing a duty of reasonable care."[50] The rule "bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury" and "prevents parties who have contracted with each other from recovery beyond the bargained-for risks."[51] Stated differently, the rule "bars all tort claims seeking recovery for economic losses when the

---

[48] *Westgate Resorts*, 2012 UT 55, ¶ 33.

[49] Dkt. No. 31, at 9-17, 19, 22-23.

[50] *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669.

[51] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶ 28, 230 P.3d 1000.

-8-

claims are not based on a duty independent of the contractual obligations between the parties."[52] Applying these general principles, federal and state courts have concluded that the economic loss rule prevents recovery for negligent and intentional torts where the duties between the parties sound only in contract.[53]

Here, Plaintiffs allege that Mr. Soares and Mantex fraudulently induced Finish Point and Advantage into entering contractual agreements to provide services, and then fraudulently induced Finish Point and Advantage to continue providing services under the agreements despite significant outstanding invoices. To the extent that these claims arose prior to the formation of the contract, they are independent of the duties the parties undertook upon formation of the contractual agreement. As a result, the economic loss rule does not require dismissal of the fraudulent inducement claim in its entirety.

At the same time, the court concludes that any claim for fraudulent inducement to recover economic damages arising out of the Agreement or the Customer Service Agreement will be barred by the economic loss rule, because Plaintiffs have not asserted a legal duty independent of the contractual obligations after the parties entered into the contracts. In other words, neither Bigpayout nor Finish Point may assert a fraudulent inducement claim for acts or conduct that occurred during the period of time each was in a contractual relationship with Mantex or Mr. Soares. With this conclusion in mind, the court considers whether each party stated their claims plausibly and with particularity, as required by Rules 8(a) and 9(b).

---

[52] *Anapoell v. Am. Express Bus. Fin. Corp.*, No. 2:07-CV-198, 2007 WL 4270548, at *6 (D. Utah Nov. 30, 2007).

[53] *See, e.g., id.*; *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶¶ 48-53, 70 P.3d 1 (applying Wyoming version of economic loss rule); *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235 (adopting and applying Colorado rule to non-intentional torts); *see also Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168 ("The economic loss rule prevents recovery of economic damages under a theory of nonintentional tort when a contract covers the subject matter of the dispute.").

## B. Federal Rule of Civil Procedure 9(b)

As discussed above, a party asserting fraud must allege the "who, what, when, where, and how of the alleged fraud" and describe "the time, place, content, and consequences of the fraudulent conduct."[54] The purpose of this requirement is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based."[55]

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.* illustrates the manner in which courts should apply Rule 9(b).[56] In *Lemmon*, employees brought a claim against a hazardous waste disposal company for purportedly violating the False Claim Act.[57] The trial court dismissed the claim, concluding that the employees failed to satisfy the requirements of Rules 8(a), 9(b), and 12(b)(6).[58] The Tenth Circuit reversed, holding that the employees satisfied the legal standard by identifying the names and positions of employees engaged in the fraudulent activity, describing the specific instances of contractual and regulatory breaches, documenting the dates on which potential violations took place, stating the location of the violations, and providing factual details describing how the fraudulent activity took place.[59] Although the company presented a series of hypothetical questions that remained unanswered on the face of the complaint, the Tenth Circuit recognized that parties were not required "to provide a factual basis for every allegation" or

---

[54] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (internal quotation marks and citations omitted).

[55] *Id.* at 1172 (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (alteration in original).

[56] *Id.* at 1163.

[57] *Id.* at 1165-66.

[58] *Id.* at 1165.

[59] *Id.* (concluding plaintiff adequately pleaded a claim under the False Claims Act).

include "all the necessary information" in every allegation.[60] Rather, a plaintiff "need only show that, taken as a whole, a complaint entitled them to relief" under Rules 9(b) and 8(a).[61]

Here, Bigpayout provided sufficient factual information to satisfy Rule 9's particularity requirement. Bigpayout alleged "who" made the fraudulent representations by identifying Mr. Soares as both owner of Mantex and the individual who negotiated the terms of the Agreement with Advantage and the Gardners.[62] The Complaint provided notice of "what" by describing the statements and representations made by Mr. Soares to Advantage.[63] It also articulated "when" the fraudulent activity occurred by identifying the approximate dates of negotiations giving rise to the fraud.[64] Finally, the Complaint describes "how" the fraudulent inducement took place by articulating the manner in which representations concerning Mantex's ability and willingness to pay induced Advantage's reliance.[65] Accordingly, the court concludes that the Complaint states with sufficient particularity Advantage's fraudulent inducement claim.

At the same time, however, the court concludes that the Complaint fails to articulate Finish Point's fraud claim with the requisite particularity. Although the Complaint generally alleges that Mr. Soares made similar representations to Finish Point,[66] the Complaint fails to specifically identify the date or subject matter of any fraudulent representations prior to the time frame that the parties entered into the Customer Service Agreement.[67] And the Complaint

---

[60] *Id.* at 1173.

[61] *Id.*; *but see Osborn v. Brown*, No. 2:12-CV-775, 2013 WL 1411781 (D. Utah Apr. 8, 2013).

[62] Dkt. No. 19, ¶¶ 10, 12-21, 23-24, 26, 27, 30, 32, 37, 39, 102.

[63] *Id.* ¶¶ 13-18, 29-33, 40, 44.

[64] *Id.* ¶¶ 12-19, 32-37.

[65] *Id.* ¶¶ 15-17, 30, 46, 106-10.

[66] *Id.* ¶¶ 105 ("Soares did the same with FPM in order to keep FMP handling customer support.").

[67] *Id.* ¶¶ 67-79.

similarly fails to provide dates or descriptions of the content of misrepresentations by Mr. Soares after Finish Point began providing its services.[68] Accordingly, where Finish Point has "not given details showing the who, what, when, where, and how" of the alleged conduct, as required by Rule 9(b), the court dismisses Finish Point's fraudulent inducement claim.[69]

C. **Federal Rule of Civil Procedure 8(a)**

Mr. Soares argues that Plaintiffs fail to state plausible fraudulent inducement claims because the Complaint does not explicitly "claim that Advantage or Finish Point were ignorant of Mantex's alleged undercapitalization."[70] In Utah, a party seeking to prevail on such a claim must prove that it acted "reasonably and in ignorance of [the] falsity" of the statement.[71]

The court must assume the truth of factual allegations and apply its "judicial experience and common sense" when evaluating the plausibility of a particular claim.[72] In this case, the Complaint includes sufficient factual allegations for the court to conclude that Advantage lacked knowledge of the extent to which Mantex and Mr. Soares were willing or able to pay for its services.[73] For example, Bigpayout describes in detail the negotiations and representations that allegedly induced Advantage's conduct, including Mr. Soares's representations about his track record, Mantex's ability to cover costs, and his personal promise to pay outstanding invoices—in short, the fraudulent promises went beyond mere undercapitalization.[74] Bigpayout also alleges

---

[68] *See id.* ¶ 78.

[69] *See Osborn v. Brown*, No. 2:12-CV-775, 2013 WL 1411781, at *4 (D. Utah Apr. 8, 2013) (reaching similar conclusion where party referred to collective groups of defendants without providing detail or specifics).

[70] Dkt. No. 31, at 19.

[71] *Daines v. Vincent*, 2008 UT 51, ¶ 38, 190 P.3d 1269 (quoting *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35).

[72] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

[73] Dkt. No. 19, ¶¶ 12-18, 37-39, 78-79, 100-12.

[74] *Id.* ¶¶ 12-18.

that Advantage relied on Mr. Soares's representations.[75] Assuming the truth of the allegations in the Complaint, a reasonable juror could conclude that Advantage acted reasonably and in ignorance of the falsity of the statements. Mr. Soares invites the court to draw a contrary conclusion, but such a consideration would be inappropriate at this stage of the proceeding.[76] Accordingly, the court concludes that Rules 8(a) does not provide an adequate basis for dismissing Bigpayout's fraudulent inducement claim.

In contrast, the court concludes that Finish Point's allegations fail to give rise to a plausible fraudulent inducement claim.[77] As discussed above, the economic loss rule operates as a bar to any tort claims arising out of the Customer Service Agreement.[78] Stated differently, where Finish Point fails to allege any independent duty arising after the Customer Service Agreement, the rule limits Finish Point's claim to pre-contract representations. Here, Finish Point failed to include in the Complaint any factual allegations of fraudulent statements that induced acts prior to the formation of the Customer Service Agreement.[79] The Complaint's description of Finish Point's relationship with Mr. Soares is also devoid of the types of factual allegations that would permit a court to "infer potential victory."[80] As a result, Rule 8(a) also requires dismissal of Finish Point's fraudulent inducement claim.

IV. **MISREPRESENTATION**

Mr. Soares argues that the economic loss rule bars Plaintiffs' negligent misrepresentation claims. The rule provides that "a party suffering only economic loss from the breach of an

---

[75] *Id.* ¶¶ 110-12.

[76] Dkt. No. 31, at 19.

[77] *See, e.g.*, *Osborn v. Brown*, No. 2:12-CV-775, 2013 WL 1411781, at *4 (D. Utah Apr. 8, 2013).

[78] *See supra* Part III.A.

[79] Dkt. No. 19, ¶¶ 67-79.

[80] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law."[81]

Under Utah law, a party seeking to prevail on a negligent misrepresentation claim "must demonstrate the existence of a duty running between the parties."[82] Courts interpreting this requirement have concluded that a misrepresentation or omission is actionable only where the "defendant has a duty to disclose" or "there exists a duty to speak."[83] For example, in *Smith v. Frandsen*, the Utah Supreme Court concluded that a material omission could give rise to liability, but only after the Court held that policy considerations justified imposing a limited duty on real estate developers to disclose discoverable defects to remote purchasers.[84]

In this case, Plaintiffs argue that Mr. Soares and Mantex had a duty to speak because they possessed superior knowledge on matters relating to their finances and their ability to perform under any contract.[85] In support of this proposition, Plaintiffs cite to *First Security Bank N.A. v. Banberry Development Corp.*, a case in which the Utah Supreme Court described in general terms an individual's responsibility to disclose the truth.[86] Plaintiffs also appear to suggest that *Smith v. Frandsen* imposes an independent duty on every negotiating party to disclose any and all material facts. But this is far too broad an interpretation—the *Smith* court simply recognized that the duty to disclose attached only if policy considerations or the parties' relationship gave

---

[81] *Hermansen v. Tasulis*, 2002 UT 52, ¶ 16, 48 P.3d 235 (citation omitted) (emphasis in original). Plaintiffs briefly argued that the economic loss rule does not extend to non-parties to a contract. This is not so. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 23, 221 P.3d 234; *see, e.g.*, *Aclys Int'l v. Equifax*, 438 F. App'x 689, 691 (10th Cir. 2011).

[82] *Smith v. Frandsen*, 2004 UT 55, ¶ 9, 94 P.3d 919.

[83] *Id.* ¶ 11.

[84] *Id.* ¶¶ 14-17; *see also Hermansen v. Tasulis*, 2002 UT 52, ¶ 18-20 (recognizing independent legal duty of licensed real estate professional to disclose known material defects in property).

[85] Dkt. No. 32, at 24.

[86] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1331 (Utah 1990).

rise to a duty—it does not stand for the proposition that the duty exists in every interaction.[87] In fact, Utah courts have declined to recognize a duty to speak "where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties."[88]

Here, the parties engaged in an arm's length transactions. For nearly a month, the parties negotiated the objectives of their agreement and the payment terms.[89] The factual allegations in the Complaint neither suggest nor expressly allege the existence of a fiduciary relationship. And Plaintiffs do not cite a single case in which a Utah court recognized an independent duty to disclose for parties entering into or negotiating similar commercial arrangements. The only legal duties apparent on the face of the Complaint arise out of contract negotiations and performance. In the absence of an independent legal duty, the court concludes that Plaintiffs' negligent misrepresentation theory fails to state an actionable claim.[90]

## V. ALTER EGO

Mr. Soares argues that Plaintiffs' alter ego claim fails to satisfy Rule 8(a). As discussed above, "only a complaint that states a plausible claim for relief survives a motion to dismiss."[91]

Accepting the truth of the Plaintiffs' factual allegations, the court concludes that the Complaint adequately alleges a basis for recovery under the doctrine of alter ego, at least for the

---

[87] *Id.* at 1333-34 (concluding absence of fiduciary relationship or special circumstances foreclosed duty to disclose).

[88] *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980) ("Under such circumstances, the plaintiff is obligated to take reasonable steps to inform himself, and to protect his own interests.").

[89] Dkt. No. 19, ¶¶ 12-22, 67-68.

[90] Plaintiffs briefly argue that Mr. Soares's voluntary assumption of Mantex's debts gave rise to an independent legal duty, and that his failure to make these payments constituted a breach of his "duty to exercise due care in performing the voluntarily assumed duties." (Dkt. No. 32, at 26.) Plaintiffs fail to cite a Utah decision that supports finding an independent duty in this context. While this specific aspect of the claim appears to sound in negligence, rather than misrepresentation, the court concludes that it nevertheless arises out of contractual obligations and falls squarely within the economic loss rule. Because the court concludes that the economic loss rule requires dismissal, it need not consider whether Rule 9(b) applies as an independent bar to Plaintiffs' misrepresentation claims.

[91] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

purposes of Rule 8(a). In Utah, the doctrine of alter ego is "not an independent claim for relief; rather, it is a theory of liability."[92] When considering whether alter ego supplies a basis for piercing the corporate veil, courts consider (a) whether there is a "unity of interest and ownership [such] that the separate personalities of the corporation and the individual no longer exist" and (b) whether "observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow."[93] The Utah Supreme Court adopted an eight factor test for analyzing alter ego claims:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.[94]

These factors "should be viewed as non-exclusive considerations and not dispositive elements."[95]

In this case, the Complaint articulates a sufficient factual basis for applying the alter ego doctrine. The Complaint provides a plausible basis for concluding that a unity of interests existed between Mr. Soares and Mantex. For example, Mr. Soares represented himself as the owner of Mantex, negotiated on Mantex's behalf, entered into agreements on the company's behalf, purportedly exercised control over the company, and promised to personally cover Mantex's outstanding obligations.[96] Assuming the truth of the allegations describing his role

---

[92] *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 6 n.1, 284 P.3d 630; *White Family Harmony Inv., Ltd. v. Transwestern W. Valley, LLC*, No. 2:05-CV-495, 2005 WL 2893784, at *5 (D. Utah Oct. 31, 2005).

[93] *Lowry*, 2012 UT 39, ¶ 14.

[94] *Id.* ¶ 16 (quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)).

[95] *Id.* ¶ 17.

[96] Dkt. No. 19, ¶¶ 12-18, 21, 26, 29-30, 32-33, 39, 44, 46, 47, 57, 65.

within Mantex and in the negotiations, it is entirely plausible that observance of the corporate form would sanction fraud or lead to inequitable results. Because these factual allegations are "enough . . . for a court to infer potential victory," the court finds that the Complaint states a plausible basis for recovering under an alter ego theory.[97]

## VI. CONVERSION

Finally, Mr. Soares argues that Plaintiffs' conversion claim fails to state a plausible claim under Rule 8(a). After careful consideration, the court agrees.

In Utah, conversion requires "an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[98] Because conversion is intended to remedy an interference with a possessory right to property, "a party alleging conversion must show that he or she is entitled to *immediate* possession of the property at the time of the alleged conversion" and "the right to maintain the action may not be based upon a right to possession at a future time."[99] Although "money represented by a general debt cannot be the subject of conversion, an exception is recognized for misappropriated funds placed in the custody of another for a definite application."[100]

As a preliminary matter, the court concludes that the exception to the general rule has no application here. Unlike cases where a plaintiff places funds in a third party's custody for a particular use, which the third party then misuses,[101] the funds in question here purportedly came

---

[97] *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

[98] *State v. Twitchell*, 832 P.2d 866, 870 (Utah Ct. App. 1992).

[99] *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 20, 974 P.2d 288 (internal quotation marks and citations omitted) (emphasis in original).

[100] *Twitchell*, 832 P.2d at 870.

[101] *See, e.g.*, *Boyd v. Wimes*, 664 S.W.2d 596, 599 (Mo. Ct. App. 1984).

from Mantex's customers.  Moreover, the Complaint fails to identify funds that Advantage or Finish Point placed with Mantex for a particular use or definite application.

More importantly, the Complaint fails to state a plausible factual basis for satisfying an essential element of conversion: an immediate possessory interest, as opposed to a right to possession at a future time.  During oral argument on the motion, counsel suggested that the merchant account used by the parties gave Bigpayout an immediate and possessory interest in the funds.  Yet, the Complaint itself contains only two cursory references to merchant accounts.[102]  The mere mention of a merchant account is not enough to create a plausible immediate possessory interest.  The only specific reference in the Complaint to an immediate possessory interest is framed as a legal conclusion, which this court is instructed to disregard when evaluating the plausibility of a claim at this stage of the proceeding.[103]  Where the "four corners" of the Complaint fail to provide any other factual basis for inferring an immediate and possessory interest in a third-party's account, the court must dismiss the conversion claim.[104]

## CONCLUSION

For the reasons stated above, Mr. Soares's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The court **DISMISSES WITH PREJUDICE** the following claims against Mr. Soares: the Third Cause of Action; the Seventh Cause of Action, and Bigpayout's Second Cause of Action to the extent it is based on post-contract formation conduct.  The court also **DISMISSES WITH PREJUDICE** Finish Point's Second Cause of Action against Mr. Soares.

---

[102] Dkt. No. 19, ¶¶ 30, 165.

[103] *See id.* ¶ 168; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

[104] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

**SO ORDERED** this 14th day of October, 2014.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge